Respironics, Inc. v. Zoll, Medi, 15-1485 Mr. DeFranco, you have reserved three minutes of your rebuttal. Sorry. Yes, Your Honor. Okay. You may drink more water if you want. I'm all set, thank you. I was thirsty, though, and I couldn't wait to get up here to have a swig. Okay. You may proceed. May it please the Court, my name is Denise DeFranco. I'm here on behalf of Appellant Respironics, Inc. Your Honor, the issue in this case is whether the Board correctly determined that the Owen publication does not anticipate the challenged claims of the 003 patent. The Board found that a single limitation in the challenged claims was not met in the Owen reference, and that is the— Is your argument that the construction was incorrect or that the construction was correct, but it was erroneously applied? It's the latter, Your Honor. Basically, the Board articulated the correct construction, data indicating whether a patient has followed instructions for use. But then when the Board applied that claim construction to the Owen reference, the Board added limitations in connection with each of the different disclosures of the Owen reference. In connection with the response button, the Board added a narrow limitation that the reference had to disclose the time at which the instruction, please respond, was given to the patient. And in connection with the wear time indicator, the Board added a narrow limitation to the otherwise broad and reasonable construction of patient compliance data, the limitation that the reference actually was required. But just to be clear, when you said the Board added the subsequent limitation, now you're not saying that the Board reconstrued the claim. They added the limitation in their application of the construction to— Yes, Your Honor. I say that—I would describe it as that the Board's claim construction, while articulated correctly, was morphed in the way that the Board applied it to the prior art reference. And in that sense, the Board did erroneously construe the claims because the Board did require the reference to disclose the time at which an instruction was given to a patient and, with respect to the wear time indicator, that the patient be told what the recommended wear time is. In particular— I understood the Board as saying what the reference needs to teach in order to establish that the button presses were following an instruction for use is that there just has to be some comfort in knowing that all the data points about button presses was in response to an instruction. Right now, as is, they didn't see anything in Owen that supported that notion. Right, Your Honor. And one example of a way to support that notion would be some record of data showing when the patient was prompted. That's correct, Your Honor. And the time that the instruction is given is one of the pieces of data that is stored and transmitted in the Owen reference, which we've pointed out in our briefs. But to the point, even without respect to the time that the instruction is given to the patient, the thing that's important to remember here is the disclosure in Owen is all about pushing the button in response to an instruction to do so. Now, why is that what Owen teaches? Owen teaches that because the device itself is trying to decide whether or not this patient should get a shock or not. And the claim construction is whether the construction of patient compliance data is data indicating whether a patient has followed instructions for use. Now, the Owen reference does teach storing enough data to determine whether or not that button push was in response to an instruction because that's how the device knows whether or not to shock. So I submit to you, Your Honor, that the disclosure... But you can push the button accidentally, right? You can push the button accidentally. And for purposes of deciding whether or not Owen anticipates, those aberrant button pushes are really not relevant. What is relevant here is the disclosure in Owen of pushing the button to stop a shock. That is, the device does store data to determine whether or not, number one, an instruction, please respond, is given. But if the board saw that your argument was based solely on the recording of button presses, then there's a question as to... That's kind of in a vacuum, right? And then they don't know if that... They can't tell just from that teaching alone whether it was in response to an instruction to press the button as opposed to the patient unilaterally electing to press that button, perhaps accidentally or for some other purpose, right? Right. Disclosure of any embodiment that anticipates anticipates. It is irrelevant if there are other aspects of Owen that do not anticipate. And an aberrant button push might not anticipate. But a disclosure of a button push in response to an instruction to do so is patient compliance data, and that data is stored and transmitted. And where that comes from, and the fact that we've argued this throughout, even to the board, is the Owen disclosure... The principle to Owen disclosure is that in response... Please respond. Verbal message. This is the important part. So as to confirm patient consciousness or not. The device is storing data that tells whether or not the button push is in response to an instruction such that a shock should not be delivered. That's the critical thing here. And, Your Honor, I think Dr. Ephimoth argued that in his deposition, that the whole point of the button push in response to an instruction to do so is so that the device doesn't shock. And the same thing, Dr. Gropper also explained that the button push was in response to an instruction, and because it's in response to an instruction, the device won't shock. So what we do know from the disclosure of Owen is, number one... I guess the point is if a doctor at some point down the road was looking at the medical records of a patient and all that was stored was data about when a patient pressed a button, I guess for the board, they said that wasn't enough, that you needed to give some context to why the button was pressed at this particular time and that particular time. I'll give you two answers to that, Your Honor. Number one, the claim doesn't talk about a doctor down the line using the data that's stored to determine compliance. The claim simply requires that there be data to determine compliance. And the other thing that we know is that Owen does disclose, number one, the delivery of a message, please respond, the timing of the delivery of the message, please respond, the weather the button is pushed in response to that message, and the time. So we do know that pursuant to the board's original construction, data indicating, just data indicating whether or not the patient is complying with an instruction. There are some things in Owen that are interesting that maybe, in fact, do teach, that Owen also discloses recording buzzer prompts and when the buzzer prompts occur, but I guess the other side is saying that particular argument was waived. Do you agree with that? Absolutely not, Your Honor, and the reason is on the institution decision, the board construed the term patient compliance data to mean data indicating whether or not a patient has complied with instructions for use. And on the institution decision, the board, when applying that construction to the Owen reference, added additional limitations, the time at which the instruction was given. Respironics had no reason to point to the board, the disclosure in Owen, that the time that the instruction was given was disclosed in Owen until the board added that limitation in its final written decision. So, and separate and apart from that- What prompted this change? Obviously the board determined its construction one way at the point of initiation and another way at the point of the final decision. Can you point to what occurred? Yes, Your Honor. Actually, it was very creative luring on the part of appellees, and what I mean by that is the disclosure of Owen did not change, and the construction as articulated by the board did not change, data indicating whether a patient has followed instructions for use. On the institution decision, the board found that, in and of itself, that the patient pushed the response button, that Owen disclosed was pushing the response button in response to an instruction to do that, was patient compliance data. What happened was during depositions and at oral argument, in fact, at oral argument, for the very first time, Zoll's counsel argued that that button push in response to an instruction to do so can't be that without some assurance that it wasn't some other kind of button push, that it wasn't one of those aberrant button pushes. Well, the reason I say that's creative luring is because what's important here is whether or not Owen does disclose some embodiment that anticipates, and it's the embodiment that the board was focused on in its institution decision, namely pushing the button in response to an instruction to do so, that does show by a preponderance of the evidence that Owen anticipates the properly construed claim. What about the recommended wear time? That's another alternative that the board rejected. Yes, Your Honor, and the board rejected that one because on the theory that the recommended, the message that we point to in the Owen reference, the Owen reference says that the device will give a message, an indication to the wearer by a visual message and or a verbal prompt that you've been wearing the device greater than the recommended period of time. We say that's patient compliance data that is stored and transmitted. Owen says it's data that's stored and transmitted, and it is patient compliance data within the meaning of the board's definition of data indicating whether a patient has followed instructions for use. The board's analysis there added an additional limitation of basically that the instruction of how long to wear the device has to be given to the patient. And because Owen didn't disclose that the instruction was given to the patient, the board found there was no patient compliance data using that aspect of the Owen disclosure. Now, Your Honor, I submit to you that that is incorrect because even the 003 patent doesn't talk about disclosing to the patient what the recommended wear time is. So, again, we're talking about the proper construction, which the board articulated, data indicating whether the patient has followed instructions for use is satisfied by the Owen reference. So under the board's construction, the 003 patent could not infringe itself? Exactly. That's right. If under the board's morphed construction, the construction as applied by the board, which is to say that there must be some disclosure that the instruction of how long to wear the device was actually given to the patient. That's not disclosed in Owen. Now, Your Honor, I'd like to turn to the issue of reversal versus remand, if I may. And there, Your Honor, we are, in fact, asking for a reversal. And I think the basis for a reversal instead of a remand is, actually, I think that this Court's recent decision in the Belton versus Burkett case is quite instructive in this regard. And why is it that I think that you can reverse based on the record that you have in front of you? And there are several things. First of all, the board did make findings of fact in this institution decision that bear on whether or not all these other claim limitations are met, like, for example, storing and transmitting and that sort of thing. And also, in connection with deciding that the Claim 1 was anticipated, the board found that each and every element of Claim 1 is satisfied by the Owen reference. So you have, and also in the final written description, there's a summary of the Owen reference. And the summary of the Owen reference, which spans from A9 to A11 in the record, actually is a recitation of the disclosures in the Owen reference. Now, separate and apart from that, there is the institution decision. In the institution decision, the board did adopt means plus function definitions, or the proposed constructions that were offered by Respironics. And in the final written decision, the board didn't vacate those definitions or constructions. They basically said the constructions of those terms are not material to this decision. So there are means plus function and claim construction definitions. So why shouldn't we remand to have the board consider those that come in at the first instance? You could do that, Your Honor. I'm also suggesting that there's enough here in the record to reverse. And in the Belton decision, it's exemplary. This court looked to the reference itself, to the decision to institute, to other findings that were in the final written decision, basically with respect to claims that were found obvious, to the claims that were reversed, excuse me, the claims that were canceled. You're well into your rebuttal time. Oh, I'm so sorry. I rest, Your Honor. Thank you for giving me that heads up. All right. Thank you. Mr. Bernholz. May it please the court. Richard Bernholz of Ireland, Manila for Zoll. I'll start where they left off. Why don't you start with the morph argument? Sure. There's no morphing of claim construction. The standard of review in this case is substantial evidence, whether the finding of no anticipation is supported by substantial evidence. It is, and the board's decision should be affirmed. In terms of the claim construction, during the board proceedings, Respironix presented slides that said Respironix does not dispute the claim construction. On appeal, Respironix has represented that they're not. Let's say claim construction, we're looking at substantial evidence. What about the application of a claim construction? So that's exactly the substantial evidence standard, because what we have here is you have a claim construction that's not disputed. And when you look at the cases that were cited by appellant, the cases where they say there's an issue of the application of the claim construction, when you look at those cases, there are appeals from district court decisions involving grants of summary judgment in which claim construction was disputed. So there's a de novo standard of review for claim construction and a de novo standard of review for the summary judgment. The entire appeal is governed by a de novo standard of review. Here, the appeal is governed by substantial evidence standard, whether the finding of no anticipation is supported. Well, what if hypothetically we have a claim construction on the books and everybody's happy with it, and then when it comes to the main event, applying it, what one could see is perhaps a metaconstruction, where now there's a construction of the construction, and then that is used to figure out whether or not a reference teaches all those terms in the construction of the construction. So I think you have a situation like that, wouldn't you say, okay, maybe that's a claim construction issue. So I think you need to look at the nature of the party's dispute. And here what's happening is the other side is trying to transform a substantial evidence inquiry into a claim construction issue when there really isn't a claim construction issue. And in the Abbott case, which was cited by appellants, there was a express morphed construction where the claim term required something to be substantially fixed. The construction was that it allowed for some movement. And then in applying that construction, what the court said is I'm going to look for whether something is somewhat restrained. So it expressly changed its construction. Nothing like that happened here in the board's decision. The board was very careful to say we're applying. If you find that the board added a limitation in between its initiation and its final decision, wouldn't that be something similar to what you just described? So we'd have. Go ahead. In this case, the board consistently looked for context. The indicia of patient compliance was what was disclosed in Owen sufficient to teach someone of skill in the art whether there was patient compliance data from these button pushes or from the visual indicator about this expiration of the connection between the harness and the defibrillator, sort of like a sell-by date flashing on you. The date is now up, but it doesn't indicate anything about what the patient actually did. And the board consistently looked at indicia of compliance and the context of the disclosure of Owen. It did not add limitations or read in limitations. So you have to look at the disclosure. They're arguing that a button push, a disembodied button push is patient compliance data. The board said I need to know what that data is. And in looking at the disclosure in Owen in that context, it said it's just a button push. Wouldn't you say that perhaps the board added a specific intent type limitation to the claim, to the construction? I would say no, absolutely not. Then why is there a difference between whether the button was pushed purposely or inadvertently? So the data must indicate patient compliance. And the data concerning whether the button was pushed without tying it to a prompt or an instruction leaves no information to the person looking at that data. You have information that the button was pushed. So it's not that there's no information. You do have information. You have information that the button was pushed. Your problem with that information is you can't tell whether it was pushed inadvertently or not. That's right. It's just undifferentiated data. Isn't that a specific intent limitation? Aren't you putting a limitation on the patient as to when, whether they desired, intended to push a button or not? I'm looking at the quality and character of the data that's transmitted. And what you have here is just an undifferentiated button push. And when you look at the purpose of it. That's not the quality of the data. That's not in the claim construction. That's not in the claim. It's just the transmission of data. The claim requires data indicating that a patient followed instructions for use. And so there has to be something about the data that connects the information with the instruction. I guess we have a philosophical inquiry here. It's like how do we understand, from which perspective are we supposed to look at this data? If we're looking at the data from the perspective of someone that reads this data three months later and is trying to figure out what does the data mean, then maybe you have a point. If we look at it from the perspective of the patient, the patient knows that it was complying with that data, and maybe even by whoever the prompter is. The prompter will have a record of that button push at that time in response to the prompt. So we have to understand, all right, from which perspective are we supposed to understand the data in terms of patient compliance data? The patient is complying with a prompt. I mean, that's what the embodiment is talking about in OAM. So I understand the philosophical nature of the question, but what we have to do is look at what is at issue. We have medical devices that have been prescribed for certain treatment. People in this field understand what the term patient compliance data refers to, and it refers to data indicating that the patient has followed instructions as the board construed it, and a push of a button in this instance to disarm the device, which is what it's used for. It says you're about to get shocked if there's a cardiac event or the device is malfunctioning. It gives you a warning, and it's like a panic button. And so pushing the button is at most indicative of using the device, and the construction that the other side proposed to the board was that compliance data was anything relating to use of the device, and the board rejected that because that construction does not put significant weight on the word compliance. And so Mr. Gropper, in his declaration, said a person of skill in the art would not understand the button push, which just indicates whether the button was pushed, as patient compliance data. What about the fact that Owen does seem to teach recording the buzzer prompts and storing the time when those buzzer prompts occur? So there is a reference in Owen that says... Memory block 57. It does a lot of different things, including these things. So there is no... I would say that there is no specific disclosure of storing the time of the prompt. The prompt may be stored. There is a line in Owen that says voice, tone, and buzzer prompts may end up in the memory logging block. But the discussion about a time log, which was never raised at all before the board, this is the waiver question that your Honor asked, is Resperon has conceded that it never argued to the board the time of the prompt being stored in Owen. And there is nothing in Owen, even taking that argument at its face value, there is nothing connecting the time disclosure to those prompts. It's just a general statement that a time of an event may be part of the log. But when you look at the disclosure in that paragraph of Owen, which was never cited below to the board as patient compliance data, when you look at that, there is nothing connecting it to the prompts. It's actually talking about data that's sent to and from the defibrillator, not internal operations of the defibrillator. So this is an anticipation case. And so from an anticipation standpoint, referring to that abstract statement is not sufficient. Plus it was never submitted to the board, and opposing counsel conceded in their rehearing petition to the board that this issue was not raised. The argument that was made in opening today that, well, this was clever lawyering and this just came up by Zoll, I think that's a complete red herring argument because this is an anticipation case and it's appellant's burden of proof to show anticipation. And the original petition did not even mention the button press. It did not mention the visual indicator about this expiration of the time between the connection with the electrodes and the harness. So there's no way to fault our side for raising arguments that show that there has not been a showing that the button press or the visual indicator are patient compliance data. The one point that was made in opening about, well, anticipation some of the time is still anticipation. That was sort of if there's one embodiment that anticipates, then that's enough. And what the board found, and correctly so, was that there were no embodiments that met the patient compliance data limitations, that the button press was just undifferentiated data and there was no context around that, and the visual indicator that that did not reflect compliance with anything. And Respironix has conceded that the data about the time the harness was connected to the defibrillator is not related to the amount of time the patient has actually worn the device. So it's indicative of nothing. It's like a warning light coming on in your car that says three months have elapsed since you last changed your oil. But it doesn't say whether you changed your oil, whether you noticed the light, or anything that actually was done in connection with your car. Same thing, it's like a sell-by date for the milk in your refrigerator. You don't know. I was curious, why wouldn't the phrase recommended wear time just inherently mean that the patient has been informed somehow, some way, it's been communicated to the patient how long the wear time is for? So in this context, first the board specifically found that the word, that the argument about recommended was not made during the IPR proceedings, and so it declined to address it for that reason. Although it said, even so, there's no disclosure or no evidence that a person of skill in the art would understand recommended to mean recommended to the patient, as opposed to the concept that these electrodes have a certain life. It's basically, and that's what happens, they deteriorate. In the device, you connect the electrode harness to the defibrillator, and then there's a countdown that starts, whether you wear it or not. Is it the case that the longer the patient wears it, the greater the deterioration? It's the longer that the, it's connected to the, in Owen, it's how long the electrodes are connected, the electrode harness is connected to the defibrillator. It's not necessarily connected to how long the patient wears it. Your hypothetical question is, are they going to deteriorate longer if you wear it longer? I'll say yes. I mean, that's the nature of the material, that they deteriorate after a certain amount of time. If that information then is transmitted from the device back to a doctor, that the patient has been wearing this for X amount of hours, and that amount of time is above the recommended time of use, why does it matter whether the patient knows it or not? I mean, you have patient data that's been communicated. There is no information about the patient wearing the device. It's literally a countdown for how long the electrode harness has been connected to the defibrillator, and Respironix's expert has conceded that it's not related to the amount of time that the patient wears the device. There's nothing relating to this indicator. The indicator does not have any relation to the patient actually wearing the device. It's literally the result of a countdown. The light comes on after a certain amount of time, and it doesn't provide any information to a caregiver about how long the patient has actually been wearing the device. That was clear from the record. Okay. Unless there are further questions, thank you. Mr. Franco, you have three minutes. Your Honors, I'd like to just make one point in connection with each of the two different disclosures in the Owen reference. First of all, Your Honor, Judge Tannen, in response to your question or your comment that it seems that it's important from whose perspective are you looking for compliance? Is it the physician down the line? Is it the patient themselves? I'd submit to you, Your Honor, that the answer is the data itself. Does the data indicate that a button push was in response to a message to do so? And what we know from the Owen disclosure is that the data will tell us whether or not the push was in response to instruction to do so. So, Owen, the data does indicate patient compliance because it does store enough information to determine whether any given button push was in response to an instruction to do so. Why is that so, that the data stored is sufficient enough to indicate that it was in response to an instruction to do that? Well, because the data stores whether or not a message was given, what the message was, please respond, when it was given, if the patient pushed the response button, and the time at which the response button was submitted. So where does the Owen reference say all of that? We've cited all the different parts in our brief, Your Honor, where Owen discloses the time at which a message is given, the time at which a button is pushed in response, and the data will also indicate whether or not a shock was given. So the device itself knows whether or not the patient complied with the instruction to push the button, and the device keeps track. Was the shock given? Was the shock not given? If the shock wasn't given, that data indicates that the patient complied with the instruction to push the response button. So it's the data that tells whether or not the patient complied, and it's the disclosure in Owen that there can be such compliance, that the patient can respond to instruction to do so, that's important here. Owen discloses the fact that there is patient compliance data that's stored and transmitted. Because there's also data on whether there was a shock given? That's part of it. I think even if there's no data on whether or not the shock is given, the device keeps track, even under the board's morphed construction that you have to disclose the time that the message was given. Owen undoubtedly discloses when the message is given to the patient, when the patient responds. In fact, Owen discloses a whole training protocol  So we know that the device stores when the message is given, when the patient responds. In fact, it stores what the response time is over a repeated training protocol. That's all that even the board's morphed construction requires. So if I may turn to the recommended wear time. Very briefly, okay? You're almost out of your time. Okay, thank you, Your Honor. The moment the message is given to the patient that you've exceeded the recommended wear time, number one, the instruction is given to the patient, and number two, there is information about compliance. The device is then storing the fact that the patient hasn't complied with the wear time instruction. Thank you, Your Honor. Thank you very much.